IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

SUPPLY BASKET, INC., KATHERINE    :
LINDBERG, MICHAEL BARKER AND   :    CIVIL ACTION
MELINDA HARTLEY,                   :    FILE NO.
                                   :
        Plaintiffs,               :
                                   :
v.                                    :
                                   :
GLOBAL EQUIPMENT COMPANY,      :
INC. d/b/a GLOBAL INDUSTRIAL     :
EQUIPMENT, a subsidiary of Systemax,  :
Inc.,                             :
                                   :
        Defendants.           :

**VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT,
TEMPORARY RESTRAINING ORDER AND PRELIMINARY
AND PERMANENT INJUNCTIVE RELIEF**

COMES NOW, Supply Basket, Inc., Katherine Lindberg, Michael Barker and Melinda Hartley, Plaintiffs in the above-styled action, and hereby state as follows:

**PARTIES AND JURISDICTION**

1.

Plaintiff Supply Basket, Inc. is a Georgia corporation and its principal place of business is located at 126 Merchants Park Drive, Hoschton, Gwinnett County, Georgia 30543.

2.

Individual Plaintiff Katherine Lindberg is a former employee of Defendant and is a resident of the State of Georgia and resides at 50 Kingston Place, Braselton, Gwinnett County, Georgia 30517.

3.

Individual Plaintiff Michael Barker is a former employee of Defendant and is a resident of the State of Georgia and resides at 1358 Washington Street, Jefferson, Jackson County, Georgia 30549.

4.

Individual Plaintiff Melinda Hartley is a former employee of Defendant and is a resident of the State of Georgia and resides at 362 Paradise Valley Road, Danielsville, Madison County, Georgia 30633.

5.

Defendant Global Equipment Company, Inc. d/b/a Global Industrial Equipment is a New York Corporation with its principal place of business in Georgia located at 2505 Mill Center Parkway, NE, Buford, Georgia 30518, and is subject to the personal jurisdiction of this Court. Global Equipment Company, Inc. d/b/a Global Industrial Equipment may be served through its registered agent, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

6.

Jurisdiction and venue are proper in this Court.

## **FACTS**

7.

Plaintiff Lindberg was Defendant's at will employee until May 20, 2013.

8.

Plaintiff Lindberg executed a Confidentiality/Non-Solicitation /Assignment Agreement on

March 8, 1999, which is attached hereto as Exhibit A.

9.

Plaintiff Barker was Defendant's at will employee until May 16, 2013.

10.

Plaintiff Barker executed a Confidentiality/Non-Solicitation /Assignment Agreement on December 18, 2000, which is attached hereto as Exhibit B.

11.

Plaintiff Hartley was Defendant's at will employee until May 10, 2013.

12.

Plaintiff Hartley executed a Confidentiality/Non-Solicitation /Assignment Agreement on December 4, 2006, which is attached hereto as Exhibit C.

13.

Hereafter these documents are referred to as "Agreements."

14.

All Plaintiffs' Agreements were executed in Georgia.

15.

Plaintiffs worked in Georgia exclusively.

16.

Plaintiffs have never been to the New York office of Defendant Global.

17.

Plaintiffs Lindberg, Barker and Hartley after their separation from Global established Plaintiff Supply Basket, Inc.

18.

Plaintiff Supply Basket, Inc. was incorporated on May 15, 2013 and began to operate on May 23, 2013.

19.

Despite lacking personal jurisdiction or legal basis, Global has threatened to sue and seek a restraining order against these Georgia Plaintiffs in a trial court in New York City on Friday, September 27, 2013. A letter threatening such is attached hereto as Exhibit D.

20.

While Georgia's law regarding restrictive covenants recently changed, the legislation specifically provided that it did not apply to agreements entered into prior to the ratification of the Constitutional Amendment in November 2010. See Carson v. Obor Holding Company, LLC, 318 Ga. App. 645, 646 n. 1, 734 S.E.2d 477 (2012).

21.

Prior to that change, and the law that will apply to Plaintiffs' Agreements, applied strict scrutiny to restrictive covenants contained in employment agreements, and if not strictly drawn, Georgia's courts will strike them and will not enforce them. Trujillo v. Great Southern Equipment Sales, LLC, 289 Ga. App. 474, 476, 657 S.E.2d 581, 583 (2008); New Atlanta Ear, Nose & Throat Associates, P.C. v. Pratt, 253 Ga. App. 681, 560 S.E.2d 268 (2002). Advance Technology

Consultants, Inc. v. Roadtrac, 250 Ga. App. 317, 551 S.E.2d 735 (2001); Dent Wizard International

Corp., LLC v. Brown, 272 Ga. App. 553, 612 S.E.2d 873 (2005); Riddle v. Geo-Hydro Engineers,

Inc., 254 Ga. App. 119, 561 S.E.2d 456 (2002).

22.

Plaintiffs' Agreements contain a Customer Non-Solicitation provision which reads as follows:

> I acknowledge and agree that the Company has a legitimate interest in its confidential business information and that information must be protected. To this end, while in the employ of the Company and for a period of one (1) year following termination of my employment for any reason (or for a period equal to the length of my employment if that employment was for less than one year), I will not, on my own behalf or on behalf of any business other than the Company, sell to any customer of the Company or an Affiliated Company, nor solicit any customer for the purpose of selling to such customer any business or industrial equipment, safety equipment or supplies, or computer equipment or supplies. For purposes of this paragraph, a "customer of the Company or any Affiliated Company" shall mean any person or enterprise which has purchased goods or se rvices from the Company or any Affiliated Company within the prior two years, the name of which account I know or have reason to know is a customer or potential customer of the Company or an Affiliated Company.

23.

The provision is unenforceable because it forbids the employee from contacting a customer

or prospect regardless of whether the employee actually served those customers or prospects while

he or she was employed, and contains no territorial restriction.

24.

The provision does not require actual or even material contact with a customer and only

requires is that the employee know or have reason to know the person or entity is a customer or

prospect.

-5-

25.

Unless the non-solicit covenant pertains only to those customers with whom the employee had an actual business relationship during the term of the agreement, the non-solicit covenant must contain a territorial restriction. Advance Technology Consultants, 250 Ga. App. at 321, 551 S.E.2d at 738; see also, W.R. Grace & Company v. Mouyal, 262 Ga. 464, 467, 422 S.E.2d 529 (1992); Physician Specialists in Anesthesia, P.C. v. MacNeill, 246 Ga. App. 398, 406, 539 S.E.2d 216 (2000), Habif, Arogeti & Wynne, P.C. v. Baggett, 231 Ga. App. 289, 298 498 S.E.2d 346 (1998); Pratt, 253 Ga. App. at 687, 560 S.E. at 273.

26.

The Agreements do not contain a territorial restriction.

27.

The provision lacks both an actual contact requirement and territorial limitation and thus are unenforceable. Compare Augusta Eye Center, P.C. v. Duplessie, 234 Ga. App. 226, 506 S.E.2d 242 (1998) (Upholding a non-solicitation provision where there was a definition of material contact defined to mean actual interaction).

28.

The provision contains a "rolling window" (some period of time preceding termination) wherein the customer relationship exists, which is also prohibited by Georgia law. E.g. ALW Marketing Corp. v. Hill, 205 Ga. App. 194, 195, 422 S.E.2d 9 (1992); Fuller v. Kolb, 238 Ga. 602, 604, 234 S.E.2d 517 (1977).

-6-

29.

The provision is impermissively overbroad because it bars Plaintiffs from accepting any work from customers or prospects that initiate contact with the Plaintiffs. Carson, 318 Ga. App. at 651, 734 S.E.2d at 482-83.

30.

Public policy prohibits such an overly broad restriction because it unreasonably impairs the Plaintiffs' ability to make a living, as well as the public's ability to choose the person with whom it prefers the contract. Dougherty, McKinnon & Luby, P.C. v. Greenwald, Denzik & Davis, P.C., 213 Ga. App. 891, 894, 447 S.E.2d 94 (1994); Singer v. Habif, Arogeti & Wynne, P.C., 250 Ga. 376, 377, 297 S.E.2d 473 (1982).

31.

The provision is overly broad, unreasonable and thus unenforceable because it could be read to preclude the Plaintiffs from soliciting customers who may have already severed their relationship with Defendant Global. Wachovia Insurance Services, Inc. v. Fallon, 299 Ga. App. 440, 443-44, 682 S.E.2d 657 (2009).

32.

The provision in the Agreements is overly broad and unreasonable because it defines customer not only as those which the employee knows but also those the employee "ha[s] reason to know is a customer or potential customer with the Company." Trujillo, supra, (striking provision more narrowly drawn than Defendant Global's as the clause in that case at least required the employee to have confidential or proprietary knowledge about the customer).

33.

The provision restricts the Plaintiffs from contact with any customers of "affiliated companies" without defining who those affiliated companies are, or establishing that Plaintiffs were ever employed by any affiliated companies, and thus is much broader than is reasonable under Georgia law.

34.

The employee non-recruitment provision is independently invalid because it purports to prevent the hiring of employees who approach Plaintiffs. See Wachovia Insurance Services, Inc., supra; Orkin Exterminating Company, Inc. v. Martin Co., 240 Ga. 662, 242 S.E.2d 135 (1978).

35.

The confidentiality provision contains no durational limit and therefore is unenforceable except as to information that constitutes a trade secret. Allen v. Hub Cap Heaven, Inc., 225 Ga. App. 533, 539, 484 S.E.2d 259 (1997) (citing U3S Corp. of America, etc. v. Parker, 202 Ga. App. 374, 378, 414 S.E.2d 513 (1991)).

36.

The "Enforceability" or blue-pencil provision does not "save" the Agreements.

37.

While the Agreements contain a New York choice of law provision, such provisions are unenforceable in Georgia when contained within an employment agreement containing unenforceable restrictive covenants. Bunker Hill Int'l, Ltd. v. Nationsbuilder Ins. Servs., Inc., 309 Ga. App. 503, 506, 710 S.E.2d 662, (2011) ("A forum-selection or choice-of-law provision may also

be invalid, however, where the clause contravenes 'a strong public policy of the forum in which the suit is brought, whether declared by statute or by judicial decision.'") (citing Iero v. Mohawk Finishing Products, 243 Ga.App. 670, 671, 534 S.E.2d 136 (2000), quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)); Hulcher Servs., Inc. v. R.J. Corman R.R. Co., L.L.C., 247 Ga. App. 486, 488-89, 543 S.E.2d 461, 464-65 (2000) (Georgia law, rather than Texas law as specified in contract, applied in action involving Georgia employee where Texas law flagrantly contravened public policy of Georgia with regard to restrictive covenants).

38.

The Agreement provides that it will be governed and construed in accordance with the laws of New York.  Georgia will not enforce such choice of law provisions in interpreting restrictive covenants in employment agreements.  Hostetler v. Answerthink, Inc., 267 Ga. App. 325 (2004).

## COUNT ONE - DECLARATORY JUDGMENT

Plaintiffs incorporate Paragraphs 1 through 38 as if fully set forth herein.

39.

The customer non-solicitation provision in the Agreements is not enforceable because it fails to restrict solicitation only of customers with whom Plaintiffs had actual contact.

40.

The customer non-solicitation provision in the Agreements is not enforceable because it contains no territorial restriction.

41.

The customer non-solicitation provision in the Agreements is not enforceable because it

prevents Plaintiffs from serving customers who initiate contact with Plaintiffs.

42.

The customer non-solicitation provision in the Agreements is not enforceable because it contains an impermissible "polling window" time limitation.

43.

The non-recruitment provision is unenforceable because it prevents hiring employees who initiate contact with Plaintiffs.

44.

The confidentiality provision is unenforceable because it contains no time limitation.

45.

The Agreements are unenforceable and in contravention of the laws of the State of Georgia. The Agreements are void and unenforceable and in contravention of the laws of the State of Georgia in that they are a restraint of trade against public policy and constitute an attempt on the part of Defendant Global to interfere with Plaintiffs' attempt to earn a living.

46.

Defendant Global has asserted its intention on enforcing the restriction as to Plaintiffs' future employment activities and has asserted its intention to prevent Plaintiffs from engaging in any business competitive with that of Defendant.

47.

Under the laws of the State of Georgia, this Court has jurisdiction to hear and determine questions of construction of the written contract and declare the rights of the parties.

-10-

48.

Plaintiffs are without any other adequate remedy at law or equity other than the institution of declaratory judgment.

## COUNT TWO - TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

49.

Plaintiffs incorporate Paragraphs 1 through 48 as if fully set forth herein.

50.

Defendant Global has threatened to sue Plaintiffs in New York.

51.

Plaintiffs have no contacts with New York.

52.

Georgia Courts do not recognize foreign choice of law provisions in agreements that controvert public policy.

53.

Without temporary, preliminary and permanent injunctive relief, Defendant Global will continue to seek enforcement of and harass Plaintiffs as it attempts to pursue their livelihood. Without immediate injunctive relief, Plaintiffs will suffer irreparable harm.

54.

Plaintiffs are entitled to temporary, preliminary and permanent injunctive relief:

(a)     prohibiting Defendant Global from enforcing the restrictions in the employment

agreement;

(b)     from contacting and harassing potential clients of Plaintiffs in the attempt to prevent

her from making a livelihood;

(c)     to prohibit Defendant Global from pursuing actions in other states seeking to enforce

this covenant against a resident of the State of Georgia. Enron Capital and Trade Resources Corp.

v. Pokalsky, 227 Ga. App. 727, 490 S.E.2d 137 (1997), (cert. denied 1998); Hostetler v. Answer

think, Inc., supra.

(d)     to prohibit Defendant Global from seeking to arbitrate these unenforceable

Agreements.

## COUNT III - ATTORNEYS' FEES

55.

Plaintiffs incorporates Paragraphs 1 through 54 as if fully set forth herein.

56.

At all times herein, Defendant Global has acted in bad faith, has been stubbornly litigious,

caused Plaintiffs unnecessary trouble and expense arising out of conduct alleged herein, thereby

entitling Plaintiffs to recover reasonable attorneys' fees and costs of litigation, as provided for in

O.C.G.A. § 13-6-11 and O.C.G.A. § 9-15-14.

57.

The undersigned sent correspondence to Defendant attached hereto as Exhibits E and F

setting forth in detail the invalidity of any claim of the Agreements' enforceability and frivolity of

any threatened suit.

-12-

WHEREFORE, Plaintiffs pray for the following:

A.      Declaratory Judgment that the Agreements are void, unenforceable, and of no force and effect;

B.      Temporary and Interlocutory Injunctive Relief as well, Preliminary and Permanent Injunctive Relief against Defendant Global from seeking to enforce or litigate these Agreements in any other Court or forum, including arbitration;

C.      An award of attorneys' fees; and

D.      Such other and further relief as determined by the Court.


Respectfully submitted, this 27 day of September, 2013.

CAROTHERS & MITCHELL, LLC


THOMAS M. MITCHELL
Georgia Bar No. 513597
Attorneys for Plaintiffs

1809 Buford Highway
Buford, GA 30518
(770) 932-3552
thomas.mitchell@carmitch.com

IN SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

SUPPLY BASKET, INC., KATHERINE   :
LINDBERG, MICHAEL BARKER AND  :    CIVIL ACTION
MELINDA HARTLEY,               :    FILE NO.
                                   :
        Plaintiffs,          :
                                   :
v.                                 :
                                   :
GLOBAL EQUIPMENT COMPANY,    :
INC. d/b/a GLOBAL INDUSTRIAL    :
EQUIPMENT, a subsidiary of Systemax, :
Inc.,                              :
                                 :
        Defendants.        :

## **VERIFICATION**

PERSONALLY appeared before the undersigned attesting officer authorized by law to

administer oaths, Michael Barker, who, after being first duly sworn, deposes and states that the facts

contained in the Complaint are true and correct to the best of his knowledge.

_____
MICHAEL BARKER

Sworn and subscribed to
before me this 26th day
of September, 2013.

_____
Notary Public
Commission Expires: 03/21/14

*Katherine Lindberg*

## CONFIDENTIALITY/ NON-SOLICITATION/ASSIGNMENT AGREEMENT

**THIS AGREEMENT CONCERNS YOUR LEGAL OBLIGATIONS AS AN EMPLOYEE. READ IT CAREFULLY BEFORE YOU SIGN IT.**

In consideration for my employment by ___GLOBAL   E C___ (the "Company") and other valuable consideration
(print Employer's name)
(including any bonus payment now or hereinafter paid to me), I, ___Katherine L. Lindberg___ hereby agree as follows:

<u>Confidential Information</u>

1. I will not disclose or use at any time, either during or subsequent to my employment, any confidential information or knowledge obtained or acquired by me while employed by the Company or by reason of my employment, including but not limited to trade secrets, business methods, systems or strategies and information concerning customers, suppliers, circulation, mailing lists and print schedules of the Company, Global DirectMail Corp or any other company owned directly or indirectly by Global DirectMail Corp (an "Affiliated Company"). The term "confidential information" does not include information which was or becomes generally available to the public other than as a result of disclosure by you.

2. All records, files, drawings, documents, manuals, memoranda, papers and the like relating to the business, work, or investigation of the Company, and prepared, used, possessed by me or under my control, during the course of my employment, shall be and remain the sole and exclusive property of the Company. This provision extends to copies and summaries of such items. At the request of the Company, or upon leaving the employ of the Company, regardless of the reason thereof, I will deliver promptly to the Company all such records, files, drawings, documents, manuals, memoranda, papers and the like, and any copies or reproductions thereof. I understand that I may not remove any property of the Company from the Company's premises without the permission of the Company.

<u>Customer Non-Solicitation</u>

3. I acknowledge and agree that the Company has a legitimate interest in its confidential business information, and that such information must be protected. To this end, while in the employ of the Company and for a period of one (1) year following termination of my employment for any reason (or for a period equal to the length of my employment if that employment was for less than one year). I will not, on my own behalf or on behalf of any business other than the Company, sell to any customer of the Company or any Affiliated Company, nor solicit any customer for the purpose of selling to such customer any business or industrial equipment, safety equipment or supplies, or computer equipment or supplies. For purposes of this paragraph, a "customer of the Company or any Affiliated Company" shall mean any person or enterprise which has purchased goods or services from the Company or any Affiliated Company within the prior two years, the name of which account I know or have reason to know is a customer or potential customer of the Company or an Affiliated Company.

<u>Employee Non-Solicitation</u>

4. While in the employ of the Company and for a period of two (2) years following termination of my employment for any reason, I will not hire, attempt to hire, or solicit the employment of any employee or officer of the Company (or any Affiliated Company) on behalf of myself or any person, firm, or corporation, or otherwise interfere with the employment relationship between the Company (or any Affiliated Company) and any of its employees or officers.

<u>Ideas and Inventions</u>

5. I agree to assign, and do hereby assign, to the Company all my rights and interests in any and all ideas, systems, methods, computer programs and inventions, whether patentable or not, made or conceived by me, solely or jointly with others, during the term of my employment, except for any idea or invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on my own time and which does not relate either to the business of the Company or the Company's actual or demonstrably anticipated research or development. All ideas and inventions assigned herein are hereinafter referred to as Assigned Inventions. The provisions of this paragraph shall be binding on my heirs, executors, administrators, legal representatives, and assigns.



EXHIBIT
A

6. I will promptly disclose in writing all Assigned Inventions to the Company, to assist in the Company preparing patent applications for Assigned Inventions, and to execute any applications, assignments or other documents which, in the Company's opinion, are required to obtain patents or other proprietary rights for those inventions throughout the world and to vest title thereto in the Company all at the Company's expense, but for no additional consideration to me beyond my salary or wages otherwise paid.  In the event that the Company requires my assistance under this paragraph after termination of my employment, I shall be compensated for my time reasonably and actually spent at the Company's request in providing that assistance at an hourly rate equivalent to my salary or wages during the last period of employment.

Enforceability

7. I acknowledge that the Company has attempted to limit my rights only to the extent necessary to protect the Company from unfair competition and for other reasonable purposes.  The parties recognize, however, that reasonable people may differ in making such a determination.  Consequently, the parties agree that, if the scope or enforceability of this Agreement is in any way disputed at any time, a court or other trier of fact may make modifications necessary to correct any unreasonable or unlawful terms and enforce the parties' intent to the maximum extent that is under the circumstances existing at that time.

Remedies

8. I acknowledge (a) that compliance with this Agreement is necessary to protect the business and good will of the Company and (b) that a breach of this Agreement would irreparably and continually damage the Company in such a way that money damages may not be adequate.  Consequently, I agree that, in the event that I breach or threaten to breach any of these covenants, the Company shall be entitled to both (1) a preliminary or permanent injunction in order to prevent the continuation of such harm and (2) money damages insofar as they can be determined.  Nothing in this Agreement, however, shall be construed to prohibit the Company from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative.

Other Provisions

9. I represent and warrant that I have no agreement with or obligation to others in conflict with the foregoing or which would in any way prevent me from assuming and undertaking the duties for which I am being employed.  If any part of this Agreement should be found to be invalid or unenforceable, that shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.

10. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of law provisions.  In the event of any claim of breach or dispute regarding this Agreement, the Company may, in its sole discretion, submit such claim of breach or dispute to arbitration with the American Arbitration Association pursuant to its voluntary labor rules, which shall be binding upon the parties hereto.  The Company's right to institute formal court proceedings regarding claims or disputes arising under this Agreement is in addition to, and is not limited by, the Company's right to submit any such claim or dispute to arbitration.

11. This Agreement shall not be construed as an employment agreement for a specific term.  I acknowledge and agree that the Company and I may terminate my employment at any time for any reason.

WITNESSED BY:

_Rodney K. Irby_
Company Representative (print)

_[signature]_
Signature

_3/8/99_
Date

_Katherine L Lindberg_
Employee Name (print)

_[signature]_
Signature

# CONFIDENTIALITY/NON-SOLICITATION/ASSIGNMENT AGREEMENT

**THIS AGREEMENT CONCERNS YOUR LEGAL OBLIGATIONS AS AN EMPLOYEE. READ IT CAREFULLY BEFORE YOU SIGN IT.**

In consideration for my employment by *Global Equipment* (the "Company") and other valuable consideration
(print Employer's name)
(including any bonus payment now or hereinafter paid to me), I, *Michael Barker*, hereby agree as follows:

<u>Confidential Information</u>

1.  I will not disclose or use at any time, either during or subsequent to my employment, any confidential information or knowledge obtained or acquired by me while employed by the Company, including but not limited to trade secrets, business methods, systems or strategies and information concerning customers, suppliers, circulation, mailing lists and print schedules of the Company, Systemax Inc. or any other company owned directly or indirectly by Systemax Inc. (an "Affiliated Company"). The term "confidential information" does not include information which was or becomes generally available to the public other than as a result of disclosure by you.

2.  All records, files, drawings, documents, manuals, memoranda, papers and the like relating to the business, work, or investigation of the Company, and prepared, used, possessed by me or under my control, during the course of my employment, shall be and remain the sole and exclusive property of the Company. This provision extends to copies and summaries of such items. At the request of the Company, or upon leaving the employ of the Company, regardless of the reason thereof, I will deliver promptly to the Company all such records, files, drawings, documents, manuals, memoranda, papers and the like, and any copies or reproductions thereof. I understand that I may not remove any property of the Company from the Company's premises without the permission of the Company.

<u>Customer Non-Solicitation</u>

3.  I acknowledge and agree that the Company has a legitimate interest in its confidential business information and that information must be protected. To this end, while in the employ of the Company and for a period of one (1) year following termination of my employment for any reason (or for a period equal to the length of my employment if that employment was for less than one year), I will not, on my own behalf or on behalf of any business other than the Company, sell to any customer of the Company or an Affiliated Company, nor solicit any customer for the purpose of selling to such customer any business or industrial equipment, safety equipment or supplies, or computer equipment or supplies. For purposes of this paragraph, a "customer of the Company or any Affiliated Company" shall mean any person or enterprise which has purchased goods or services from the Company or any Affiliated Company within the prior two years, the name of which account I know or have reason to know is a customer or potential customer of the Company or an Affiliated Company.

<u>Employee Non-Solicitation</u>

4.  While in the employ of the Company and for a period of two (2) years following termination of my employment for any reason, I will not hire, attempt to hire, or solicit the employment of any employee or officer of the Company (or an Affiliated Company) on behalf of myself or any other person, firm, or corporation, or otherwise interfere with the employment relationship between the Company (or any Affiliated Company) and any of its employees or officers.

<u>Ideas and Inventions</u>

5.  I agree to assign, and do hereby assign, to the Company all my rights and interests in any and all ideas, systems, methods, computer programs and inventions, whether patentable or not, made or conceived by me, solely or jointly with others, during the term of my employment, except for any idea or invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on my own time and which does not relate either to the business of the Company or the Company's actual or demonstrably anticipated research or development. All ideas and inventions assigned herein are hereinafter referred to as Assigned Inventions. The provisions of this paragraph shall be binding on my heirs, executors, administrators, legal representatives, and assigns.



EXHIBIT
B

6.  I will promptly disclose in writing all Assigned Inventions to the Company, to assist in the Company preparing patent applications for Assigned Inventions, and to execute any applications, assignments or other documents which, in the Company's opinion are required to obtain patents or other proprietary rights for those inventions throughout the world and to vest title thereto in the Company all at the Company's expense, but for no additional consideration to me beyond my salary or wages otherwise paid. In the event that the Company requires my assistance under this paragraph after termination of my employment, I shall be compensated for my time reasonably and actually spent at the Company's request in providing that assistance at an hourly rate equivalent to my salary or wages during the last period of employment.

Enforceability

7.  I acknowledge that the Company has attempted to limit my rights only to the extent necessary to protect the Company from unfair competition and for other reasonable purposes. The parties recognize, however, that reasonable people may differ in making such a determination. Consequently, the parties agree that, if the scope or enforceability of this Agreement is in any way disputed at any time, a court or other trier of fact may make modifications necessary to correct any unreasonable or unlawful terms and enforce the parties' intent to the maximum extent that is under the circumstances existing at that time.

Remedies

8.  I acknowledge (a) that compliance with this Agreement is necessary to protect the business and good will of the Company and (b) that a breach of this Agreement would irreparably and continually damage the Company in such a way that money damages may not be adequate. Consequently, I agree that, in the event that I breach or threaten to breach any of these covenants, the Company shall be entitled to both (1) a preliminary or permanent injunction in order to prevent the continuation of such harm and (2) money damages insofar as they can be determined. Nothing in this Agreement, however, shall be construed to prohibit the Company from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative.

Other Provisions

9.  I represent and warrant that I have no agreement with or obligation to others in conflict with the foregoing or which would in any way prevent me from assuming and undertaking the duties for which I am being employed. If any part of this Agreement should be found to be invalid or unenforceable, that shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.

10. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of law provisions. In the event of any claim of breach or dispute regarding this Agreement, the Company may, in its sole discretion, submit such claim of breach or dispute to arbitration with the American Arbitration Association pursuant to its voluntary labor rules, which shall be binding upon the parties hereto. The Company's right to institute formal court proceedings regarding claims or disputes arising under this Agreement is in addition to, and is not limited by, the Company's right to submit any such claim or dispute to arbitration.

11. This Agreement shall not be construed as an employment agreement for a specific term. I acknowledge and agree that the Company and I may terminate my employment at any time for any reason.

WITNESSED BY:

*Mary L. Nourie*
Company/Representative (print)

*Mary L. Nourie*
Signature

*12/18/00*
Date

*Michael Barker*
Employee Name (print)

Signature



## CONFIDENTIALITY/NON-SOLICITATION/ASSIGNMENT
## AGREEMENT

THIS AGREEMENT CONCERNS YOUR LEGAL OBLIGATIONS AS AN EMPLOYEE. READ IT CAREFULLY BEFORE YOU SIGN IT.

In consideration for my employment by Systemax Global Equipment (the "Company") and other valuable
(print Employer's name)
consideration (including any bonus payment now or hereinafter paid to me), I, Melinda Hartley
hereby agree as follows:

Confidential Information
I will not disclose or use at any time, either during or subsequent to my employment, any confidential information or knowledge obtained or acquired by me while employed by the Company, including but not limited to trade secrets, business methods, systems or strategies and information concerning customers, suppliers, circulation, mailing lists and print schedules of the Company, Systemax Inc. or any other company owned directly or indirectly by Systemax Inc. (an "Affiliated Company"). The term "confidential information" does not include information which was or becomes generally available to the public other than as a result of disclosure by you.

All records, files, drawings, documents, manuals, memoranda, papers and the like relating to the business, work, or investigation of the Company, and prepared, used, possessed by me or under my control, during the course of my employment, shall be and remain the sole and exclusive property of the Company. This provision extends to copies and summaries of such items. At the request of the Company, or upon leaving the employ of the Company, regardless of the reason thereof, I will deliver promptly to the Company all such records, files, drawings, documents, manuals, memoranda, papers and the like, and any copies or reproductions thereof. I understand that I may not remove any property of the Company from the Company's premises without the permission of the Company.

Customer Non-Solicitation
I acknowledge and agree that the Company has a legitimate interest in its confidential business information and that information must be protected. To this end, while in the employ of the Company and for a period of one (1) year following termination of my employment for any reason (or for a period equal to the length of my employment if that employment was for less than one year), I will not, on my own behalf or on behalf of any business other than the Company, sell to any customer of the Company or an Affiliated Company, nor solicit any customer for the purpose of selling to such customer any business or industrial equipment, safety equipment or supplies, or computer equipment or supplies. For purposes of this paragraph, a "customer of the Company or any Affiliated Company" shall mean any person or enterprise which has purchased goods or services from the Company or any Affiliated Company within the prior two years, the name of which account I know or have reason to know is a customer or potential customer of the Company or an Affiliated Company.

Employee Non-Solicitation
While in the employ of the Company and for a period of two (2) years following termination of my employment for any reason, I will not hire, attempt to hire, or solicit the employment of any employee or officer of the Company (or an Affiliated Company) on behalf of myself or any person, firm, or corporation, or otherwise interfere with the employment relationship between the Company (or any Affiliated Company) and any of its employees or officers.

Ideas and Inventions
I agree to assign, and do hereby assign, to the Company all my rights and interests in any and all ideas, systems, methods, computer programs and inventions, whether patentable or not, made or conceived by me, solely or jointly with others, during the term of my employment, except for any idea or invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on my own time and which does not relate either to the business of the Company or the Company's actual or demonstrably anticipated research or development. All ideas and inventions assigned herein are hereinafter referred to as



EXHIBIT
C

Assigned Inventions. The provisions of this paragraph shall be binding on my heirs, executors, administrators, legal representatives, and assigns.

I will promptly disclose in writing all Assigned Inventions to the Company, to assist in the Company preparing patent applications for Assigned Inventions, and to execute any applications, assignments or other documents which, in the Company's opinion are required to obtain patents or other proprietary rights for those inventions throughout the world and to vest title thereto in the Company all at the Company's expense, but for no additional consideration to me beyond my salary or wages otherwise paid. In the event that the Company requires my assistance under this paragraph after termination of my employment, I shall be compensated for my time reasonably and actually spent at the Company's request in providing that assistance at an hourly rate equivalent to my salary or wages during the last period of employment.

Enforceability
I acknowledge that the Company has attempted to limit my rights only to the extent necessary to protect the Company from unfair competition and for other reasonable purposes. The parties recognize, however, that reasonable people may differ in making such a determination. Consequently, the parties agree that, if the scope or enforceability of this Agreement is in any way disputed at any time, a court or other trier of fact may make modifications necessary to correct any unreasonable or unlawful terms and enforce the parties' intent to the maximum extent that is under the circumstances existing at that time.

Remedies
I acknowledge (a) that compliance with this Agreement is necessary to protect the business and good will of the Company and (b) that a breach of this Agreement would irreparably and continually damage the Company in such a way that money damages may not be adequate. Consequently, I agree that, in the event that I breach or threaten to breach any of these covenants, the Company shall be entitled to both (1) a preliminary or permanent injunction in order to prevent the continuation of such harm and (2) money damages insofar as they can be determined. Nothing in this Agreement, however, shall be construed to prohibit the Company from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative.

Other Provisions
I represent and warrant that I have no agreement with or obligation to others in conflict with the foregoing or which would in any way prevent me from assuming and undertaking the duties for which I am being employed. If any part of this Agreement should be found to be invalid or unenforceable, that shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.

This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of law provisions. In the event of any claim of breach or dispute regarding this Agreement, the Company may, in its sole discretion, submit such claim of breach or dispute to arbitration with the American Arbitration Association pursuant to its voluntary labor rules, which shall be binding upon the parties hereto. The Company's right to institute formal court proceedings regarding claims or disputes arising under this Agreement is in addition to, and is not limited by, the Company's right to submit any such claim or dispute to arbitration.

This Agreement shall not be construed as an employment agreement for a specific term. I acknowledge and agree that the Company and I may terminate my employment at any time for any reason.

_____          _____
Signature                                Date

_____
Print Name

Representing Management Exclusively in Workplace Law and Related Litigation



Attorneys at Law

| | | |
|---|---|---|
| Jackson Lewis LLP | DETROIT, MI | MINNEAPOLIS, MN | PORTSMOUTH, NH |
| 58 South Service Road | GREENVILLE, SC | MORRISTOWN, NJ | PROVIDENCE, RI |
| Suite 410 | HARTFORD, CT | NEW ORLEANS, LA | RALEIGH-DURHAM, NC |
| Melville, New York 11747 | HOUSTON, TX | NEW YORK, NY | RICHMOND, VA |
| Tel 631 247-0404 | INDIANAPOLIS, IN | NORFOLK, VA | SACRAMENTO, CA |
| Fax 631 247-0417 | JACKSONVILLE, FL | OMAHA, NE | SAINT LOUIS, MO |
| www.jacksonlewis.com | LAS VEGAS, NV | ORANGE COUNTY, CA | SAN DIEGO, CA |

ALBANY, NY
ALBUQUERQUE, NM
ATLANTA, GA
AUSTIN, TX
BALTIMORE, MD
BIRMINGHAM, AL
BOSTON, MA
CHICAGO, IL
CINCINNATI, OH
CLEVELAND, OH
DALLAS, TX
DENVER, CO

LONG ISLAND, NY
LOS ANGELES, CA
MEMPHIS, TN
MIAMI, FL
MILWAUKEE, WI

ORLANDO, FL
PHILADELPHIA, PA
PHOENIX, AZ
PITTSBURGH, PA
PORTLAND, OR

SAN FRANCISCO, CA
SEATTLE, WA
STAMFORD, CT
WASHINGTON, DC REGION
WHITE PLAINS, NY

September 26, 2013

**VIA E-MAIL (thomas.mitchell@carmitch.com)**
Thomas M. Mitchell, Esq.
Carothers & Mitchell, LLC
1809 Buford Highway
Buford, GA 30518

Re:  Global Equipment Company, Inc. d/b/a Global
Industrial Equipment, a Subsidiary of Systemax,
Inc. v. Katherine Lindberg, Michael Barker, Ida
"Melinda" Hartley and Supply Basket, LLC

Dear Mr. Mitchell:

Pursuant to 22 NYCRR § 202.7(f), we are writing to provide notice that our client, Global Equipment Company, Inc. d/b/a Global Industrial Equipment, a Subsidiary of Systemax, Inc., intends to commence an action against your clients Katherine Lindberg, Michael Barker, Ida "Melinda" Hartley and their business Supply Basket, LLC in New York State Supreme Court, Nassau County. We intend to file an application for a restraining order and preliminary injunction in aid of arbitration before a Justice of the New York State Supreme Court, Nassau County. We will be filing those papers on or before Friday, September 27, 2013 and will appear at the courthouse located at 100 Supreme Court Drive, Mineola, New York 11501 at approximately 2:00 p.m., on September 27, 2013 should you wish to attend. We will advise if the time of the appearance changes in any manner.

Respectfully submitted,

JACKSON LEWIS LLP

Mark S. Mancher

MSM/mjr

4832-0906-0118, v. 1



EXHIBIT

D

# CAROTHERS & MITCHELL, LLC
## ATTORNEYS AT LAW

RICHARD A. CAROTHERS (GA & OH)
THOMAS M. MITCHELL
REGINA BENTON REID
E. RONALD BENNETT, JR.
AMY B. COWAN
ANGELA C. COUCH

TELEPHONE (770) 932-3552
FACSIMILE (770) 932-6348
E-MAIL:CARMITCH@CARMITCH.COM

1809 BUFORD HIGHWAY
BUFORD, GEORGIA 30518

OF COUNSEL:
MICHAEL E. HOBBS

WRITER'S EMAIL: THOMAS.MITCHELL@CARMITCH.COM
WRITER'S DIRECT DIAL: (678)730-0433

July 22, 2013

Robert W. Capobianco, Esq.
Jackson Lewis LLP
1155 Peachtree Street, N.E.
Suite 1000
Atlanta, GA 30309-3600

Re:   Katherine Lindberg, Michael Barker and Melinda Hartley

Dear Mr. Capobianco:

I write in response to your July 12, 2013 letter regarding Katherine Lindberg, Michael Barker and Melinda Hartley. These three were previous employees of Global Equipment Company, Inc. ("Global") and are currently employed by a firm named Supply Basket. Ms. Lindberg, Mr. Barker and Ms. Hartley resigned from Global on May 20th, May 16th and May 10th, respectively. Your letter appears to accuse them of having competed with Global prior to their resignations. As you well know, it is entirely proper for an employee to make plans to enter into a competing business while still employed. Nilan's Alley, Inc. v. Ginsberg, 208 Ga. App. 145, 145-146 (1993). A former employee is entitled to make arrangements to compete and upon termination immediately compete with a previous employer. Id. The only substantial steps my clients took prior to Ms. Lindberg's resignation were to establish an LLC and obtain a tax ID number. As set forth in the following paragraphs, they did not compete with Global while any of them were employed there.

Enclosed with this letter is a copy of Supply Basket's business license issued by the City of Hoschton. Incidentally, I represent the City of Hoschton and can state that it has become stricter with regard to enforcing its business license ordinance. In fact, the City recently initiated enforcement action against a salon owner in the same complex as Supply Basket for failure to have a business license. As you can see, Supply Basket's Hoschton business license is dated May 23, 2013, three (3) days after Ms. Lindberg's resignation.



EXHIBIT
E

Robert W. Capobianco, Esq.
July 22, 2013
Page -2-

From review of e-mails, Supply Basket obtained its UPS account on May 22, 2013; registered for a Dunn & Bradstreet account on May 29, 2013, which account was finalized approximately two weeks later; and obtained a SAM/CCR registration on June 4, 2013. Ms. Hartley's registration with the State of Florida was initiated on June 3, 2013 and finalized approximately ten (10) days later. Mr. Barker's registration with the State of Texas occurred on June 4, 2013. Supply Basket signed a contract with a website provider on May 28, 2013; a template was put up on May 30, 2013, and the site went live on or about June 3, 2013. Many of these activities, in fact, would fall squarely within the rule of preparing to compete without actually competing. But even the registrations with Florida and Texas occurred long after Ms. Hartley and Mr. Barker had resigned from Global.

While you may not be aware, your client actually possesses the first confirmed order that Supply Basket received on June 5, 2013. Ms. Lindberg provided a quote to Parker Hannifin on June 4, 2013 and the order was placed on June 5, 2013. Her contact at Parker Hannifin due to the auto-complete function in her email, inadvertently sent a confirmation to Global. Ms. Lindberg, Mr. Barker and Ms. Hartley did not solicit Global customers prior to their departure. This fact is clearly established by e-mails your client has where customers are asking where my clients are and why they are no longer servicing their accounts.

Supply Basket and its employees are not using any trade secrets belonging to Global. My clients took no paper or electronic files when they resigned. In fact, your client has a very sophisticated computer system and it should be fully aware of all of the activity (or a lack thereof) on my clients' computers. In fact, the USB drives on all their computers were disabled. Ms. Lindberg has knowledge of this because she had to have hers activated so that she could use a signature key for her work with Boeing, an issue I will discuss below.

As you know, the personal knowledge that a former employee has is not a trade secret. Abnet, Inc. v. Wyle Laboratories, Inc., 263 Ga. 615 (1993). For the type of work that Global and Supply Basket do, the information necessary to contact and serve customers is all within my clients' personal knowledge or a matter of public knowledge.

In short, any attempt to assert claims against Supply Basket or its employees will be frivolous litigation. Upon a successful conclusion thereof, my clients will seek attorney's fees under O.C.G.A. § 9-15-14, as well as the loser pays provision of the Georgia Trade Secret's Act found at O.C.G.A. § 10-1-764.

With regard to your request to retain information, my clients do not believe that they have any information that falls within the categories set forth in your letter. There was no e-mail communications among them prior to their departure. There were texts on their personal cell phones which I have asked them to maintain for 45 days. While I have not specifically inquired about their e-mail retention schedule they have established for Supply Basket, I will ask them to not delete e-

Robert W. Capobianco, Esq.
July 22, 2013
Page -3-

mails for at least 30 days.  These periods should give your client sufficient time to complete their investigation.

 The only electronic device that Ms. Lindberg does have is a small e-token Pro Anywhere device containing her personal credentials which was necessary to access the Boeing website.  On the date she resigned, she informed Marj Norie, Jim Logdon, Perry Painter and Scrib Daily that she had that device which is a read-only device containing only her personal information.  She has not utilized that device at Supply Basket.  She is in the midst of the onerous process of obtaining another one at this time.  Apparently there is a time stamp on that device that would establish that it had not been used since May 20, 2013.  Because that device contains substantial personal information that could be used to steal her identity, she will retain that device for 45 days, after which it will be destroyed.

 In sum, in the course of this letter I have responded to the unfounded allegations your client apparently is leveling against Supply Basket and its employees.  I have also stated to you that Supply Basket has no "company information" that would fall within the definition of trade secret or property of Global.  The only thing that Ms. Lindberg has is the e-token discussed above which it is in the best interest of both our clients that it remain in her possession until she destroys it in 45 days so that she is fully responsible for the personal information contained thereon.

 I trust this satisfactorily responds to your client's unfounded concerns and concludes this matter.

     Very truly yours,

     CAROTHERS & MITCHELL, LLC

     Thomas M. Mitchell

TMM:jmp
Encl.
cc: Katherine Lindberg
  Michael Barker
  Melinda Hartley

# Business Registration

# City of Hoschton

The Fee of $100 for License No.  BL-13-117

The Fee of $100 for License No.

May 23, 2013

## Supply Basket LLC
## 115 Towne Centre Pkwy
## Suite 109
## Hoschton, GA 30548

A License is granted in the City for the period ending
December 31, 2013 subject to compliance with the
provisions of the City of Hoschton Business License
Ordinance. License is a mere privilege subject to be
revoked and annulled and is subject to any further
ordinances that may be enacted.

Phone Sales of
Furniture &
Equipment

Witness my hand and
seal of the City
The Day and year
written above.

City Clerk

# CAROTHERS & MITCHELL, LLC
## ATTORNEYS AT LAW

RICHARD A. CAROTHERS (GA & OH)
THOMAS M. MITCHELL
REGINA BENTON REID
E. RONALD BENNETT, JR.
AMY B. COWAN
ANGELA C. COUCH

1809 BUFORD HIGHWAY
BUFORD, GEORGIA 30518

TELEPHONE (770) 932-3552
FACSIMILE (770) 932-6348
E-MAIL:CARMITCH@CARMITCH.COM

OF COUNSEL:
MICHAEL E. HOBBS

WRITER'S EMAIL: THOMAS.MITCHELL@CARMITCH.COM
WRITER'S DIRECT DIAL: (678)730-0433

June 13, 2013

**VIA CERTIFIED MAIL, R.R.R.**
**AND EMAIL**

April Gruder, Esq.
Assistant General Counsel
Systemax Inc.
11 Harbor Park Drive
Port Washington, NY 11050

CERTIFIED MAIL

Supply Basket

7100 3431 9180 0000 3776

Re:   Katherine Lindberg, Michael Barker and Melinda Hartley

Dear Ms. Gruder:

As I informed you previously, I represent Michael Barker, Melinda Hartley, and Kathy Lindberg with regard to their former employment at Global Equipment Company, Inc. ("Global"). I write to respond to your letters to these three former Global employees dated June 7, 2013.

Let me first address the issues pertaining to confidential information and trade secrets. Mr. Barker, Ms. Hartley and Ms. Lindberg were advised of their obligations under Georgia law with regard to such information and are not in violation of that law. They do not have in their possession any property or electronic files of Global.

I will now address your contentions regarding their alleged violation of the Confidentiality/Non-Solicitation/Assignment Agreement signed by each. While the font and form of the agreements signed by Mr. Barker on December 18, 2000, by Ms. Hartley on December 4, 2006 and by Ms. Lindberg on March 8, 1999 appear a little different, the content of the agreements appear to be identical and I will address them together.

While Georgia's law regarding restrictive covenants recently changed, the legislation specifically provided that it did not apply to agreements entered into prior to the ratification of the Constitutional Amendment in November 2010. See Carson v. Obor Holding Company, LLC, 318 Ga. App. 645, 646 n. 1, 734 S.E.2d 477 (2012). Prior to that change, and the law that will apply to Mr. Barker's, Ms. Hartley's and Ms. Lindberg's agreements, applied very strict scrutiny to restrictive



EXHIBIT
F

April Gruder, Esq.
June 13, 2013
Page -2-

covenants contained in employment agreements. If such covenants are not strictly drawn, the courts will strike them and will not enforce them. Trujillo v. Great Southern Equipment Sales, LLC, 289 Ga. App. 474, 476, 657 S.E.2d 581, 583 (2008); New Atlanta Ear, Nose & Throat Associates, P.C. v. Pratt, 253 Ga. App. 681, 560 S.E.2d 268 (2002).  Advance Technology Consultants, Inc. v. Roadtrac, 250 Ga. App. 317, 551 S.E.2d 735 (2001); Dent Wizard International Corp., LLC v. Brown, 272 Ga. App. 553, 612 S.E.2d 873 (2005); Riddle v. Geo-Hydro Engineers, Inc., 254 Ga. App. 119, 561 S.E.2d 456 (2002).

The agreements contain a Customer Non-Solicitation provision which reads as follows:

I acknowledge and agree that the Company has a legitimate interest in its confidential business information and that information must be protected.  To this end, while in the employ of the Company and for a period of one (1) year following termination of my employment for any reason (or for a period equal to the length of my employment if that employment was for less than one year), I will not, on my own behalf or on behalf of any business other than the Company, sell to any customer of the Company or an Affiliated Company, nor solicit any customer for the purpose of selling to such customer any business or industrial equipment, safety equipment or supplies, or computer equipment or supplies.  For purposes of this paragraph, a "customer of the Company or any Affiliated Company" shall mean any person or enterprise which has purchased goods or services from the Company or any Affiliated Company within the prior two years, the name of which account I know or have reason to know is a customer or potential customer of the Company or an Affiliated Company.

As noted in my emails to you, this provision is unenforceable under applicable Georgia law for several reasons.  First, it forbids the employee from contacting a client or prospect regardless of whether the employee actually served those clients or prospects while he or she was employed, and contains no territorial restriction.  All the provision requires is that the employee know or has reason to know the person or entity is a customer or prospect.  Georgia law is clear that unless the non-solicit covenant pertains only to those clients with whom the employee had an actual business relationship during the term of the agreement, the non-solicit covenant must contain a territorial restriction.  Advance Technology Consultants, 250 Ga. App. at 321, 551 S.E.2d at 738; see also, W.R. Grace & Company v. Mouyal, 262 Ga. 464, 467, 422 S.E.2d 529 (1992); Physician Specialists in Anesthesia, P.C. v. MacNeill, 246 Ga. App. 398, 406, 539 S.E.2d 216 (2000), Habif, Arogeti & Wynne, P.C. v. Baggett, 231 Ga. App. 289, 298 498 S.E.2d 346 (1998); Pratt, 253 Ga. App. at 687, 560 S.E. at 273.  The agreements lack either limitation and thus are unenforceable.  Compare Augusta Eye Center, P.C. v. Duplessie, 234 Ga. App. 226, 506 S.E.2d 242 (1998) (Upholding a non-solicitation provision where there was a definition of material contact defined to mean actual interaction).

April Gruder, Esq.
June 13, 2013
Page -3-

Second, the provision contains a "rolling window" (some period of time preceding termination) wherein the customer relationship exists, which is also prohibited by Georgia cases. E.g. ALW Marketing Corp. v. Hill, 205 Ga. App. 194, 195, 422 S.E.2d 9 (1992); Fuller v. Kolb, 238 Ga. 602, 604, 234 S.E.2d 517 (1977).

Third, the restrictive covenant is impermissively overbroad because it bars the employee not only from soliciting clients or prospects but also from accepting any work from customers or prospects that initiate contact with the employee. Carson, 318 Ga. App. at 651, 734 S.E.2d at 482-83. The Courts have noted that Georgia's public policy prohibits such an overly broad restriction because it unreasonably impairs the former employee's ability to make a living, as well as the public's ability to choose the person with whom it prefers the contract. Dougherty, McKinnon & Luby, P.C. v. Greenwald, Denzik & Davis, P.C., 213 Ga. App. 891, 894, 447 S.E.2d. 94 (1994); Singer v. Habif, Arogeti & Wynne, P.C., 250 Ga. 376, 377, 297 S.E.2d 473 (1982).

Fourth, the provision is overly broad, unreasonable and thus unenforceable because it could be read to preclude the employee from soliciting customers who may have already severed their relationship with Global. Wachovia Insurance Services, Inc. v. Fallon, 299 Ga. App. 440, 443-44, 682 S.E.2d 657 (2009). Fifth, the provision in the paragraph defines customer not only as those which the employee knows but also those the employee "ha[s] reason to know is a customer or potential customer with the Company." The Court in Trujillo, supra, struck a provision that was more narrowly drawn than that, as the clause in that case at least required the employee to have confidential or proprietary knowledge about the customer. Global's clause is broader and thus more unreasonable, and therefore, clearly unenforceable.

Finally, because the provision restricts the employee from contact with any customers of "affiliated companies" without defining who those affiliated companies are, or establishing that Mr. Barker, Ms. Hartley or Ms. Lindberg were ever employed by any affiliated companies, it sweeps much broader than is reasonable under Georgia law. Therefore, the provision is unenforceable under Georgia law.

Although the invalidity of the customer non-solicitation provision, as the heart of the agreements, invalidates them, the employee non-recruitment provision is independently invalid because it purports to prevent the hiring of employees who approach Mr. Barker, Ms. Hartley or Mr. Lindberg. See Wachovia Insurance Services, Inc., supra; Orkin Exterminating Company, Inc. v. Martin Co., 240 Ga. 662, 242 S.E.2d 135 (1978). The confidentiality provision contains no durational limit and therefore is unenforceable except as to information that constitutes a trade secret. Allen v. Hub Cap Heaven, Inc., 225 Ga. App. 533, 539, 484 S.E.2d 259 (1997) (citing U3S Corp. of America, etc. v. Parker, 202 Ga. App. 374, 378, 414 S.E.2d 513 (1991)). While there is some authority that the non-recruitment and confidentiality provisions could survive the failure of the customer non-solicit, they too are unenforceable as written.

April Gruder, Esq.
June 13, 2013
Page -4-

The "Enforceability" or blue-pencil provision will not save these agreements. Such a provision in an otherwise unenforceable employment agreement will not be enforced in Georgia. Johnstone, 228 Ga. App. at 297, 491 S.E.2d at 397 ("Even though the contract authorizes reformation of the restrictive covenants so as to bring them within the limits of the law, it is not allowed in the employment context.") (citing Rollins Protective Svcs. Co. v. Palermo, 249 Ga. 138, 139-140(1), 287 S.E.2d 546 (1982); Wulfhorst v. Hudgins & Co., 231 Ga. 170, 171, 200 S.E.2d 743 (1973)). Finally, while the agreements contain a New York choice of law provision, such provisions are also unenforceable in Georgia when contained within an employment agreement containing unenforceable restrictive covenants. Bunker Hill Int'l, Ltd. v. Nationsbuilder Ins. Servs., Inc., 309 Ga. App. 503, 506, 710 S.E.2d 662, (2011) ("A forum-selection or choice-of-law provision may also be invalid, however, where the clause contravenes 'a strong public policy of the forum in which the suit is brought, whether declared by statute or by judicial decision.'") (citing Iero v. Mohawk Finishing Products, 243 Ga.App. 670, 671, 534 S.E.2d 136 (2000), quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)); Hulcher Servs., Inc. v. R.J. Corman R.R. Co., L.L.C., 247 Ga. App. 486, 488-89, 543 S.E.2d 461, 464-65 (2000) (Georgia law, rather than Texas law as specified in contract, applied in action involving Georgia employee where Texas law flagrantly contravened public policy of Georgia with regard to restrictive covenants).

Given the clear unenforceability of the covenants in these agreements in light of the well-established law set forth above, any attempt to enforce these agreements against Mr. Barker, Ms. Hartley or Ms. Lindberg would be abusive litigation. The only purpose of such an action would be to intimidate these former employees into abiding by clearly unenforceable restrictive covenants. If these people are forced to endure such litigation, it will be considered abusive litigation and we will seek to recover attorney's fees after successful conclusion. S. Hammond Story Agency, Inc. v. Baer, 202 Ga. App. 281, 414 S.E.2d 287 (1991) (permitting award of attorney's fees would enforce counsel failed to distinguish controlling authority in restrictive covenant case). I trust this will conclude these matters.

Very truly yours,

CAROTHERS & MITCHELL, LLC

Thomas M. Mitchell

TMM:jmp

cc:   Michael Barker (via email)
      Melinda Hartley (via email)
      Kathy Lindberg (via email)

RECEIPT
7100343191800003776
FROM:
Thomas M. Mitchell, Esq.
RE: Supply Basket

SEND TO:
April Gruder, Esq.
Asst. General Counsel
SYSTEMAX INC.
11 HARBOR PARK DRIVE
PORT WASHINGTON NY 11050

FEES:
Postage                    0.46
Certified Fee              3.10
Special
Restricted
Receipt                    2.55
TOTAL         $ 6.11

POSTMARK OR DATE



THOMAS M. MITCHELL, ESQ
CAROTHERS & MITCHELL, LLC
1809 BUFORD HIGHWAY
BUFORD, GA 30518

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Please Print Clearly)

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

PORT WAS NY 11050
USPS
JUN 19 2013
CERTIFIED

1. Article Addressed To:

APRIL GRUDER, ESQ
ASST. GENERAL COUNSEL
SYSTEMAX INC.
11 HARBOR PARK DRIVE
PORT WASHINGTON NY 11050

2. Article Number

7100 3431 9160 0000 3776

3. Service Type
CERTIFIED

4. Restricted Delivery? (Extra Fee) ☐ Yes

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have this day served all counsel and unrepresented parties in the foregoing action with a true and correct copy of the within **VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF** via electronic mail and via first class mail addressed as follows:

Robert W. Capobianco, Esq.
Jackson Lewis LLP
1155 Peachtree Street, N.E.
Suite 1000
Atlanta, GA 30309-3600

Mark S. Mancher, Esq.
Gerald C. Waters, Esq.
Jackson Lewis LLP
58 South Service Road
Suite 410
Melville, NY 11747

Submitted, this 27th day of September, 2013.

CAROTHERS & MITCHELL, LLC

THOMAS M. MITCHELL
Georgia Bar No. 513597
Attorneys for Plaintiffs

1809 Buford Highway
Buford, GA 30518
(770) 932-3552
thomas.mitchell@carmitch.com

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

SUPPLY BASKET, INC., KATHERINE     :
LINDBERG, MICHAEL BARKER AND,   :     CIVIL ACTION
MELINDA HARTLEY,     :     FILE NO.
                                :
          Plaintiffs,     :
                                  :
v.                               :
                                  :
GLOBAL EQUIPMENT COMPANY,     :
INC. d/b/a GLOBAL INDUSTRIAL     :
EQUIPMENT, a subsidiary of Systemax,     :
Inc.,                            :
                                  :
          Defendants.     :

## PLAINTIFFS' MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION

COME NOW, Plaintiffs and respectfully request that this Court enter an emergency temporary restraining order and interlocutory injunctive relief as follows:

On Friday, September 27, 2013, Plaintiffs filed a Complaint for Declaratory Judgment, Temporary Retraining Order, Preliminary and Permanent Injunctive Relief. Notice has been given to Defendants and they have local counsel in Atlanta, Georgia. Counsel has been informed that Plaintiffs have requested a hearing as soon as possible. Therefore, the appropriate request is for interlocutory injunction. Nonetheless, Plaintiffs seek immediate relief because of threats of ongoing harm due to the actions of Defendant Global Equipment Company, d/b/a Global Industrial Equipment, Inc., specifically its threat made yesterday to file other actions today in New York.

This 27th day of September, 2013.

CAROTHERS & MITCHELL, LLC

Thomas M. Mitchell
Georgia Bar No. 513597
Attorney for Plaintiff

1809 Buford Highway
Buford, GA 30518
(770) 932-3552

-2-

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served all counsel and unrepresented parties in the foregoing action with a true and correct copy of **PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION** via electronic mail and via first class mail addressed as follows:

Robert W. Capobianco, Esq.
Jackson Lewis LLP
1155 Peachtree Street, N.E.
Suite 1000
Atlanta, GA 30309-3600


Mark S. Mancher, Esq.
Gerald C. Waters, Esq.
Jackson Lewis LLP
58 South Service Road
Suite 410
Melville, NY 11747


This 27th day of September, 2013.

CAROTHERS & MITCHELL, LLC

Thomas M. Mitchell
Georgia Bar No. 513597
Attorney for Plaintiffs

1809 Buford Highway
Buford, GA 30518
(770) 932-3552

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

SUPPLY BASKET, INC., KATHERINE :
LINDBERG, MICHAEL BARKER AND : CIVIL ACTION
MELINDA HARTLEY, : FILE NO.
 :
   Plaintiffs, :
 :
v. :
 :
GLOBAL EQUIPMENT COMPANY, :
INC. d/b/a GLOBAL INDUSTRIAL :
EQUIPMENT, a subsidiary of Systemax, :
Inc., :
 :
   Defendants. :

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION

COME NOW, Plaintiffs Supply Basket, Inc., Katherine Lindberg, Michael Barker and Melinda Hartley and files this Emergency Motion for Temporary Restraining Order, and/or Interlocutory Injunctive Relief in the above-styled action.

## I. PERTINENT FACTS

As set forth in Verified Complaint filed contemporaneously herewith, the Plaintiffs are former employees of Defendant Global Equipment Company, Inc. ("Global"). All three individual Plaintiffs signed a Confidentiality/Non-Solicitation/Assignment Agreement ("Agreements"), prior to November 2010 when the law with regard to restrictive covenants in employment agreements changed (Verified Complaint ¶¶ 7-12). Therefore, these Agreements will be interpreted under previous law requiring strict interpretation and the Court to refuse to enforce or blue pencil these otherwise unenforceable Agreements.

These Agreements were executed in Georgia. (Verified Complaint ¶¶ 114-16). Plaintiffs

worked in Georgia exclusively and never worked in New York. (Id.)

As set forth in detail below, the provisions in the Agreements are unenforceable. Notwithstanding the obvious unenforceability of the Agreements and Plaintiffs lack of contacts with New York, Defendant threatened yesterday to initiate litigation against these Plaintiffs today in New York! (Verified Complaint, Exhibit D). Plaintiffs are entitled to and in need of Emergency Relief.

## II.  ARGUMENT AND CITATION OF AUTHORITY

### A.    The Agreements Are Not Enforceable.

While Georgia's law regarding restrictive covenants recently changed, the legislation specifically provided that it did not apply to agreements entered into prior to the ratification of the Constitutional Amendment in November 2010. See Carson v. Obor Holding Company, LLC, 318 Ga. App. 645, 646 n. 1, 734 S.E.2d 477 (2012). Prior to that change, and the law that will apply to Mr. Barker's, Ms. Hartley's and Ms. Lindberg's agreements, applied very strict scrutiny to restrictive covenants contained in employment agreements. If such covenants are not strictly drawn, they are unenforceable. Trujillo v. Great Southern Equipment Sales, LLC, 289 Ga. App. 474, 476, 657 S.E.2d 581, 583 (2008); New Atlanta Ear, Nose & Throat Associates, P.C. v. Pratt, 253 Ga. App. 681, 560 S.E.2d 268 (2002). Advance Technology Consultants, Inc. v. Roadtrac, 250 Ga. App. 317, 551 S.E.2d 735 (2001); Dent Wizard International Corp., LLC v. Brown, 272 Ga. App. 553, 612 S.E.2d 873 (2005); Riddle v. Geo-Hydro Engineers, Inc., 254 Ga. App. 119, 561 S.E.2d 456 (2002). The agreements contain a Customer Non-Solicitation provision which reads as follows:

> I acknowledge and agree that the Company has a legitimate interest in its confidential business information and that information must be protected. To this end, while in the employ of the Company and for a period of one (1) year following termination of my employment for any reason (or for a period equal to the length of

-2-

my employment if that employment was for less than one year), I will not, on my own behalf or on behalf of any business other than the Company, sell to any customer of the Company or an Affiliated Company, nor solicit any customer for the purpose of selling to such customer any business or industrial equipment, safety equipment or supplies, or computer equipment or supplies. For purposes of this paragraph, a "customer of the Company or any Affiliated Company" shall mean any person or enterprise which has purchased goods or services from the Company or any Affiliated Company within the prior two years, the name of which account I know or have reason to know is a customer or potential customer of the Company or an Affiliated Company.

This provision is unenforceable under applicable Georgia law for several reasons. First, it forbids the employee from contacting a customer or prospect regardless of whether the employee actually served those customers or prospects while he or she was employed, and contains no territorial restriction. All the provision requires is that the Plaintiffs know or have reason to know the person or entity is a customer or prospect. Georgia law is clear that unless the non-solicit covenant pertains only to those customers with whom the employee had an actual business relationship during the term of the agreement, the non-solicit covenant must contain a territorial restriction. Advance Technology Consultants, 250 Ga. App. at 321, 551 S.E.2d at 738; see also, W.R. Grace & Company v. Mouyal, 262 Ga. 464, 467, 422 S.E.2d 529 (1992); Physician Specialists in Anesthesia, P.C. v. MacNeill, 246 Ga. App. 398, 406, 539 S.E.2d 216 (2000), Habif, Arogeti & Wynne, P.C. v. Baggett, 231 Ga. App. 289, 298 498 S.E.2d 346 (1998); Pratt, 253 Ga. App. at 687, 560 S.E. at 273. The Agreements lack both an actual contact requirement or territorial restriction, and thus are unenforceable. Compare Augusta Eye Center, P.C. v. Duplessie, 234 Ga. App. 226, 506 S.E.2d 242 (1998) (Upholding a non-solicitation provision where there was a definition of material contact defined to mean actual interaction).

Second, the provision contains a "rolling window" (some period of time preceding

termination) wherein the customer relationship exists, which is also prohibited by Georgia cases. E.g. ALW Marketing Corp. v. Hill, 205 Ga. App. 194, 195, 422 S.E.2d 9 (1992); Fuller v. Kolb, 238 Ga. 602, 604, 234 S.E.2d 517 (1977).

Third, the restrictive covenant is impermissively overbroad because it bars the Plaintiffs not only from soliciting customers or prospects but also from accepting any work from customers or prospects that initiate contact with the Plaintiffs. Carson, 318 Ga. App. at 651, 734 S.E.2d at 482-83. The Courts have noted that Georgia's public policy prohibits such an overly broad restriction because it unreasonably impairs the former employee's ability to make a living, as well as the public's ability to choose the person with whom it prefers the contract. Dougherty, McKinnon & Luby, P.C. v. Greenwald, Denzik & Davis, P.C., 213 Ga. App. 891, 894, 447 S.E.2d. 94 (1994); Singer v. Habif, Arogeti & Wynne, P.C., 250 Ga. 376, 377, 297 S.E.2d 473 (1982).

Fourth, the provision is overly broad, unreasonable and thus unenforceable because it could be read to preclude the Plaintiffs from serving customers who may have already severed their relationship with Global. Wachovia Insurance Services, Inc. v. Fallon, 299 Ga. App. 440, 443-44, 682 S.E.2d 657 (2009). Fifth, the provision in the paragraph defines customer not only as those which the Plaintiffs know but also those the Plaintiffs "ha[ve] reason to know is a customer or potential customer with the Company." The Court in Trujillo, supra, struck a provision that was more narrowly drawn than that, as the clause in that case at least required the employee to have confidential or proprietary knowledge about the customer. Global's clause is broader and thus more unreasonable, and therefore, clearly unenforceable.

Finally, because the provision restricts the Plaintiffs from contact with any customers of

-4-

"affiliated companies" without defining who those affiliated companies are, or establishing that Mr. Barker, Ms. Hartley or Ms. Lindberg were ever employed by any affiliated companies, it sweeps much broader than is reasonable under Georgia law. Therefore, the provision is unenforceable under Georgia law for multiple reasons.

Although the invalidity of the customer non-solicitation provision, as the heart of the Agreements, invalidates them, the employee non-recruitment provision is independently invalid because it purports to prevent the hiring of employees who approach Mr. Barker, Ms. Hartley or Mr. Lindberg. See Wachovia Insurance Services, Inc., supra; Orkin Exterminating Company, Inc. v. Martin Co., 240 Ga. 662, 242 S.E.2d 135 (1978). Finally, the confidentiality provision contains no durational limit and therefore is unenforceable except as to information that constitutes a trade secret. Allen v. Hub Cap Heaven, Inc., 225 Ga. App. 533, 539, 484 S.E.2d 259 (1997) (citing U3S Corp. of America, etc. v. Parker, 202 Ga. App. 374, 378, 414 S.E.2d 513 (1991)). While there is some authority that the non-recruitment and confidentiality provisions could survive the failure of the customer non-solicit, they too are unenforceable as written.

The "Enforceability" or blue-pencil provision does not save these Agreements. Such a provision in an otherwise unenforceable employment agreement will not be enforced in Georgia. Johnstone, 228 Ga. App. at 297, 491 S.E.2d at 397 ("Even though the contract authorizes reformation of the restrictive covenants so as to bring them within the limits of the law, it is not allowed in the employment context.") (citing Rollins Protective Svcs. Co. v. Palermo, 249 Ga. 138, 139-140(1), 287 S.E.2d 546 (1982); Wulfhorst v. Hudgins & Co., 231 Ga. 170, 171, 200 S.E.2d 743 (1973)).

Finally, while the Agreements contain a New York choice of law provision, such provisions are also unenforceable in Georgia when contained within an employment agreement containing unenforceable restrictive covenants. Hostetler v. Answerthink, Inc., 267 Ga. App. 325, 599 S.E.2d 271 (2004). Bunker Hill Int'l, Ltd. v. Nationsbuilder Ins. Servs., Inc., 309 Ga. App. 503, 506, 710 S.E.2d 662, (2011) ("A forum-selection or choice-of-law provision may also be invalid, however, where the clause contravenes 'a strong public policy of the forum in which the suit is brought, whether declared by statute or by judicial decision.'") (citing Iero v. Mohawk Finishing Products, 243 Ga.App. 670, 671, 534 S.E.2d 136 (2000), quoting The Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)); Hulcher Servs., Inc. v. R.J. Corman R.R. Co., L.L.C., 247 Ga. App. 486, 488-89, 543 S.E.2d 461, 464-65 (2000) (Georgia law, rather than Texas law as specified in contract, applied in action involving Georgia employee where Texas law flagrantly contravened public policy of Georgia with regard to restrictive covenants).

**B.      Plaintiffs Are Entitled to Emergency Injunctive Relief.**

At 1:46 p.m. on Thursday, September 26, 2013, the undersigned received the letter attached to the Verified Complaint as Exhibit D threatening to file an action in a trial court in New York today seeking a restraining order and other injunctive relief against these Plaintiffs. These Plaintiffs have never worked in New York and always worked at the Georgia location of Global. (Verified Complaint, ¶¶ 15, 16). The Agreements were executed in the State of Georgia and the Plaintiffs performed thereunder in the State of Georgia. (Verified Complaint, ¶¶ 14, 15). The New York Court has no jurisdiction over these Plaintiffs.

Notwithstanding these facts and the unenforceability of the Agreements Defendant Global, purely for purposes of harassment, has threatened to file suit in New York. Plaintiffs should not be burdened with having to defend litigation in a state in which they have never worked and which the law of which the Georgia Courts will not recognize.

Via email to Defendant's local counsel in Atlanta, as well as its New York lawyers, the undersigned informed them of the Plaintiffs' intent to seek this relief. In addition, and contrary to the actions of the Defendants with the New York action, the undersigned has provided Defendant's counsel with copies of what they filed this morning. Plaintiffs are entitled to emergency relief in the form of a temporary restraining order to prevent Defendant from suing Plaintiffs in New York and seeking to obtain relief to which they are not entitled against these Georgia residents.

The purpose of an interlocutory injunction is to preserve the status quo of the parties pending a final adjudication of the case. Dillard v. Bishop Eddie Long Ministries, Inc., 258 Ga. App. 507, 509, 574 S.E.2d 544, 546 (2002), cert. denied. Even if there is a conflict of material fact, such does not require denial of interlocutory relief; rather "there should be a balance of conveniences in such cases and a consideration whether the greater harm might be done by refusing than by granting the injunction." Garner v. Mayor and Council of Athens, 206 Ga. 815, 821, 58 S.E.2d 844, 848 (1950). Because the primary purpose of interlocutory injunctive relief is to protect the status quo, a party need not necessarily demonstrate irreparable injury as a prerequisite to entitlement. See Benton v. Patel, 257 Ga. 669, 672, 362 S.E.2d 217, 220 (1987).

Actual service of the Complaint is not required where respondents have actual notice of the hearing. O.C.G.A. § 9-11-65(b). The parties have received actual notice, have local counsel in

-7-

Atlanta and the undersigned has informed them of this action.

Injunctive relief is intended to be swift because the issues raised deal with urgency over threatened irreparable harm. Focus Entertainment International, Inc. v. Partridge Green, Inc., 253 Ga. App. 121, 558 S.E.2d 440 (2001). The law requires the trial judge to balance the harm to the parties and the respective equities. See id.

After being employed by Global for a number years, Plaintiffs are now self-employed at Plaintiff Supply Basket, Inc.   For reasons set forth above, the restrictive covenants in the Confidentiality/Non-Solicitation /Assignment Agreements are not enforceable.  Therefore, there is no harm to Defendant in granting the requested relief. Notwithstanding this, the Defendant, through New York counsel has threatened to initiate litigation in New York although none of the Plaintiffs reside nor have a principal place of business in that state. The balance of equities and potential harm to Plaintiffs militate in favor of relief. Therefore, Plaintiffs request of this Court to enter interlocutory injunctive relief (1) prohibiting Defendant from enforcing the restrictions in the Agreement; (2) from contacting or harassing potential clients of Plaintiffs stating that they are subject to even broader restrictions in an attempt to prevent them from making a livelihood; and (3) to prohibit Defendant from pursuing actions in other states or forums (including arbitration) seeking to enforce these covenants against residents of the State of Georgia.

> A choice of law provision set forth in an agreement containing a restrictive covenant will not allow the parties to choose a jurisdiction that will uphold what is against Georgia public policy; Georgia courts will decide the validity of such restrictive covenant in partial restraint of trade under Georgia law, including Georgia rules as to choice of law.

Hostetler, 267 Ga. App. 325 at p. 328-329.

-8-

In <u>Hostetler</u>, as in the case <u>sub judice</u>, the Court found it compelling that under the choice of law rule, <u>lex</u> <u>loci</u> <u>contractus</u> (the law of the place where the contract was executed applies) that the contract containing the restrictive clause was executed in Georgia, that the employee was a Georgia resident, his employer was authorized to do business in Georgia through the employee's local office, and that his work was primarily performed in Georgia. <u>Id</u>, at p. 329.

Also important to the Court's determination of this matter, however, is the fact that none of the Plaintiffs reside nor have a principal place of business in New York. Although at the time the contract was executed Defendant Global had its national headquarters in New York, Plaintiffs never worked or ever visited there. Plaintiffs will be burdened with having to litigate some 1,200 miles from home over provisions in unenforceable contracts that are more than three years old. Therefore, under the circumstances of this case and consistent with Georgia law, Plaintiffs request that the Court enjoin Defendants from seeking to enforce these Agreements in any other forum, and allow this matter to proceed in the courts of Georgia. Because of the Defendant's actions and "<u>sneak</u> <u>attack</u>," Plaintiffs request an emergency order precluding the initiation of the New York action.

## III. CONCLUSION

Restrictive covenants in employment contracts must be strictly construed under Georgia law applicable to this case and cannot be blue penciled. For multiple reasons, the covenants in this case cannot survive and Georgia law will not permit any attempt to salvage them. Moreover, Plaintiffs are entitled to relief from the possibility of having to defend frivolous and futile actions in foreign jurisdictions, such as New York. Plaintiffs further seek and are entitled to relief from harassment and threats from the Defendant based upon the completely unenforceable provisions in these

Agreements.

WHEREFORE, Plaintiffs respectfully request that the Court issue an interlocutory injunction preventing the Defendant from attempting to enforce this restrictive covenant in any other venue.

This 27th day of September, 2013.

CAROTHERS & MITCHELL, LLC

_____
Thomas M. Mitchell
Georgia Bar No. 513597
Attorney for Plaintiffs

1809 Buford Highway
Buford, GA 30518
(770) 932-3552

-10-

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served all counsel and unrepresented parties in the foregoing action with a true and correct copy of **PLAINTIFFS' BRIEF IN SUPPORT OF THEIR EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION** via electronic mail and via first class mail addressed as follows:

Robert W. Capobianco, Esq.
Jackson Lewis LLP
1155 Peachtree Street, N.E.
Suite 1000
Atlanta, GA 30309-3600

Mark S. Mancher, Esq.
Gerald C. Waters, Esq.
Jackson Lewis LLP
58 South Service Road
Suite 410
Melville, NY 11747

This 27th day of September, 2013.

CAROTHERS & MITCHELL, LLC

Thomas M. Mitchell
Georgia Bar No. 513597
Attorney for Plaintiffs

1809 Buford Highway
Buford, GA 30518
(770) 932-3552

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

2013 SEP 27   AM 10: 31

RICHARD ALEXANDER, CLERK

SUPPLY BASKET, INC., KATHERINE
LINDBERG, MICHAEL BARKER, and
MELINDA HARTLEY,
          Plaintiffs,

vs.

GLOBAL EQUIPMENT COMPANY,
INC., d/b/a GLOBAL INDUSTRIAL
EQUIPMENT, a subsidiary of Systemax.
Inc.,
          Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.: 13-A-08288-7

## ORDER DENYING PLAINTIFF'S MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION

This matter is before the Court, as Presiding Judge.  After a review of the pleading, there

is no good cause shown for an emergency hearing and this matter is DENIED.  The Court notes

that the possibility of Plaintiffs' having to defend against a yet unfiled action is too remote to

constitute emergency relief.

SO ORDERED this _27th_ of _September_, 2013.

Karen E. Beyers, Judge
Gwinnett County Superior Court

cc:    Thomas M. Mitchell, Attorney for Plaintiff