IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SUPPLY BASKET, INC., KATHERINE LINDBERG, MICHAEL BARKER AND MELINDA HARTLEY,<br><br>    Plaintiffs,<br><br>v.<br><br>GLOBAL EQUIPMENT COMPANY, INC. d/b/a GLOBAL INDUSTRIAL EQUIPMENT, a subsidiary of Systemax, Inc.,<br><br>    Defendant. | CIVIL ACTION<br>FILE NO. 1:13-CV-03220-RWS |

## AFFIDAVIT OF MICHAEL BARKER

Personally appeared before the undersigned officer authorized by law to administer oaths, Michael Barker, who upon being placed under oath deposes and states of his own personal knowledge as follows:

1.

My name is Michael Barker; I am over the age of eighteen; am not suffering from any legal disabilities; and the facts contained in this affidavit are based on my personal knowledge at the time I was employed by Global.

2.

While employed by Global Equipment Melinda Hartley and myself were considered Government Account Managers.

3.

While employed by Global Equipment Katherine Lindberg was a Corporate Account Manager.

4.

We were three of approximately 60 corporate account managers located at the Georgia office of Global Equipment. All three of us reported to Corporate Sales Supervisor Jim Logsten, who reported to Corporate Sales Manager Perry Painter, who reported to V. P. of Operations/General Manager of the Buford, Georgia location, Scribner Dailey. All of us and the next three levels of management were all located at the Buford, Georgia location.

5.

In addition, the support structure for Georgia, as well as the other Global locations, were located in Georgia. This included the Inside Sales Department, the Corporate Sales Department, Inbound Customer Service, Corporate Customer Service, Credit Department, Collections Department, Accounting Department, Accounts Payable Department, Accounts Receivable Department, Freight Claims, and two full-time information technology employees.

6.

The Human Resources Department to which we reported was located in Georgia. The HR Manger was Marj Nourie and her assistant was Lauren (LNU). All our HR concerns were directed to them and we had no dealings with any HR staff in New York.

7.

Ms. Lindberg, Ms. Hartley and me had been employed by Supply Basket and it had been operating for four months from May 23 through September 26 before we had any notice that Global intended to file suit against us.

8.

We thought the matter was concluded after our counsel sent the July 22, 2013 letter (attached as Exhibit E to the Complaint, which is Exhibit 1 to the Removal Petition) and Global's counsel never responded.

9.

Plaintiff Supply Basket is a small company and is the only source of income for Ms. Lindberg, Ms. Hartley and myself.

10.

While we have retained New York counsel, it is expensive as they charge much more than our Georgia counsel.

11.

It will cause an incredible financial strain on all three of us if we are required to litigate these matters in New York.

12.

We all live and have family, and other personal obligations, here in Georgia. Travel for litigation in New York would present a great hardship.

13.

At no time while employed with Global were we ever given reason to believe that we would be required to litigate in New York.

14.

As set forth above, much of Global's operations are here in Georgia.

15.

Global clearly has counsel located in Georgia.

16.

During the time we were employed by Global after we had signed our initial Employment Agreements, we were never requested to sign new agreements.

17.

Specifically, after November 2010, we were never asked to sign new agreements.

18.

We never competed with Global while any of the three of us were still employed by Global.

19.

We never told any clients or customers that we were leaving Global to establish Supply Basket.

20.

Based on the correspondence attached hereto as Exhibit A, Global knew before June 7, 2013 that Supply Basket was operating.

21.

The Confidentiality/Non-Solicitation/Assignment Agreements we signed make reference to "arbitration with the American Arbitration Association pursuant to its voluntary labor rules." When I go to the Association's website and type "voluntary labor rules" into its site search box it generates a page like Exhibit B showing "no results."

FURTHER AFFIANT SAYETH NOT.

_____
MICHAEL BARKER

Sworn to before me this
18th day of October, 2013.

_____
Notary Public
Commission Expires: 03/21/14



11 Harbor Park Drive  Port Washington, NY 11050
516.608.7000 / Fax 516.625.0038

June 7, 2013

VIA EMAIL AND UNITED PARCEL SERVICE

Michael Barker
1358 Washington Street
Jefferson, GA  30549
Email: michael@supplybasket.com

**RE: CONTINUING OBLIGATIONS TO GLOBAL EQUIPMENT COMPANY INC.**

Dear Mr. Barker:

I am the Assistant General Counsel for Systemax Inc. and its subsidiary, Global Equipment Company Inc. ("Global Industrial").

I wish to remind you that on December 18, 2000, you executed a Confidentiality/Non-Solicitation/Assignment Agreement (the "Agreement"), a copy of which is enclosed herein, which restricts you from, among other things:

1. Selling, on your own behalf or on behalf of any business other than Global Industrial, any **business or industrial equipment, safety equipment or supplies**, or computer equipment or supplies for a period of one year following the termination of your employment with Global Industrial to any customer of Global Industrial or any of its affiliates,
2. **soliciting any customer of Global Industrial** or any of its affiliates **for the purpose of selling to such customer any business or industrial equipment, safety equipment or supplies,** or computer equipment or supplies for a period of one year following the termination of your employment with Global Industrial,
3. disclosing any confidential information of Global Industrial or any of its affiliates, including business strategies, trade secrets, and any information concerning a customer, and
4. hiring, attempting to hire, or soliciting for the employment of any employee Global Industrial or its affiliates for a period of two years following the termination of your employment with Global Industrial.

It has come to our attention that you are currently soliciting customers and potential customers of Global Industrial. This is a clear direct violation of the Agreement that you signed on December 18, 2000, as well as state statutory and common law.

In addition, it has come to our attention that through a competitor website, www.supplybasket.com, you have on behalf of such website, sold or are in the process of selling business or industrial equipment to current customers of Global Industrial. The selling of business or industrial equipment to current customers of Global Industrial through such a competitor website, is in direct violation of your obligations under the Agreement.



EXHIBIT A

As a result of your recent resignation from Global Industrial and your continued violation of your obligations under the Agreement and other obligations under the law, demand is hereby made, that you comply with the following:

1. immediately cease and desist from contacting or soliciting any current or future customer of Global Industrial;
2. immediately refrain, directly, or indirectly, soliciting sales from or selling any business or industrial equipment, safety equipment or supplies to customers of Global Industrial through the website www.supplybasket.com, or otherwise;
3. immediately refrain from using and/or disclosing any of Global Industrial's confidential information;
4. immediately return to Global Industrial all of Global Industrial's material and confidential information, including without limitation, all customer, vendor and employee lists, contact information of all of Global Industrial's customers, vendors and employees;
5. immediately cease and desist from contacting any current Global Industrial employee for the purpose of obtaining Global Industrial confidential information, including without limitation, any customer, vendor and employee lists, contact information of any of Global Industrial's customers, vendors and employees; and
6. acknowledge your obligations hereunder by signing a copy of this letter and returning to me within five (5) days.

In the event you fail to (a) sign and return a copy of this letter within five (5) days and (b) strictly comply with all of your obligations under the Agreement or the law, particularly non-solicitation of Global Industrial customers, Global Industrial intends to take all appropriate legal action to protect its interests, including bringing an action for breach of fiduciary duty, breach of contract, and all other available claims.

If you have any questions about this letter or the agreement referenced herein, please contact me at (516) 608-7612 or agruder@systemax.com.

Very truly yours,

April Gruder
Assistant General Counsel

cc:     Richard Leeds; CEO, Systemax
        Robert Dooley; President, Global Industrial
        Eric Lerner; General Counsel, Systemax

Acknowledgement of Receipt and Review

I, Michael Barker, acknowledge that I read and reviewed this letter and shall comply with the obligations contained therein. I also reaffirm my intention to abide by my continuing obligations under the Confidentiality, Non-Solicitation, and Assignment Agreement and state statutory and common law.

_____
Michael Barker

Date:_____

3

# CONFIDENTIALITY/NON-SOLICITATION/ASSIGNMENT AGREEMENT

THIS AGREEMENT CONCERNS YOUR LEGAL OBLIGATIONS AS AN EMPLOYEE. READ IT CAREFULLY BEFORE YOU SIGN IT.

In consideration for my employment by _Global Equipment_ (the "Company") and other valuable consideration (including any bonus payment now or hereinafter paid to me), I, _Michael Barker_, hereby agree as follows:
(print Employer's name)

### Confidential Information

1. I will not disclose or use at any time, either during or subsequent to my employment, any confidential information or knowledge obtained or acquired by me while employed by the Company, including but not limited to trade secrets, business methods, systems or strategies and information concerning customers, suppliers, circulation, mailing lists and print schedules of the Company, Systemax Inc. or any other company owned directly or indirectly by Systemax Inc. (an "Affiliated Company"). The term "confidential information" does not include information which was or becomes generally available to the public other than as a result of disclosure by you.

2. All records, files, drawings, documents, manuals, memoranda, papers and the like relating to the business, work, or investigation of the Company, and prepared, used, possessed by me or under my control, during the course of my employment, shall be and remain the sole and exclusive property of the Company. This provision extends to copies and summaries of such items. At the request of the Company, or upon leaving the employ of the Company, regardless of the reason thereof, I will deliver promptly to the Company all such records, files, drawings, documents, manuals, memoranda, papers and the like, and any copies or reproductions thereof. I understand that I may not remove any property of the Company from the Company's premises without the permission of the Company.

### Customer Non-Solicitation

3. I acknowledge and agree that the Company has a legitimate interest in its confidential business information and that information must be protected. To this end, while in the employ of the Company and for a period of one (1) year following termination of my employment for any reason (or for a period equal to the length of my employment if that employment was for less than one year), I will not, on my own behalf or on behalf of any business other than the Company, sell to any customer of the Company or an Affiliated Company, nor solicit any customer for the purpose of selling to such customer any business or industrial equipment, safety equipment or supplies, or computer equipment or supplies. For purposes of this paragraph, a "customer of the Company or any Affiliated Company" shall mean any person or enterprise which has purchased goods or services from the Company or any Affiliated Company within the prior two years, the name of which account I know or have reason to know is a customer or potential customer of the Company or an Affiliated Company.

### Employee Non-Solicitation

4. While in the employ of the Company and for a period of two (2) years following termination of my employment for any reason, I will not hire, attempt to hire, or solicit the employment of any employee or officer of the Company (or an Affiliated Company) on behalf of myself or any person, firm, or corporation, or otherwise interfere with the employment relationship between the Company (or any Affiliated Company) and any of its employees or officers.

### Ideas and Inventions

5. I agree to assign, and do hereby assign, to the Company all my rights and interests in any and all ideas, systems, methods, computer programs and inventions, whether patentable or not, made or conceived by me, solely or jointly with others, during the term of my employment, except for any idea or invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on my own time and which does not relate either to the business of the Company or the Company's actual or demonstrably anticipated research or development. All ideas and inventions assigned herein are hereinafter referred to as Assigned Inventions. The provisions of this paragraph shall be binding on my heirs, executors, administrators, legal representatives, and assigns.

6. I will promptly disclose in writing all Assigned Inventions to the Company, to assist in the Company preparing patent applications for Assigned Inventions, and to execute any applications, assignments or other documents which, in the Company's opinion are required to obtain patents or other proprietary rights for those inventions throughout the world and to vest title thereto in the Company all at the Company's expense, but for no additional consideration to me beyond my salary or wages otherwise paid. In the event that the Company requires my assistance under this paragraph after termination of my employment, I shall be compensated for my time reasonably and actually spent at the Company's request in providing that assistance at an hourly rate equivalent to my salary or wages during the last period of employment.

Enforceability

7. I acknowledge that the Company has attempted to limit my rights only to the extent necessary to protect the Company from unfair competition and for other reasonable purposes. The parties recognize, however, that reasonable people may differ in making such a determination. Consequently, the parties agree that, if the scope or enforceability of this Agreement is in any way disputed at any time, a court or other trier of fact may make modifications necessary to correct any unreasonable or unlawful terms and enforce the parties' intent to the maximum extent that is under the circumstances existing at that time.

Remedies

8. I acknowledge (a) that compliance with this Agreement is necessary to protect the business and good will of the Company and (b) that a breach of this Agreement would irreparably and continually damage the Company in such a way that money damages may not be adequate. Consequently, I agree that, in the event that I breach or threaten to breach any of these covenants, the Company shall be entitled to both (i) a preliminary or permanent injunction in order to prevent the continuation of such harm and (2) money damages insofar as they can be determined. Nothing in this Agreement, however, shall be construed to prohibit the Company from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative.

Other Provisions

9. I represent and warrant that I have no agreement with or obligation to others in conflict with the foregoing or which would in any way prevent me from assuming and undertaking the duties for which I am being employed. If any part of this Agreement should be found to be invalid or unenforceable, that shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.

10. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of law provisions. In the event of any claim of breach or dispute regarding this Agreement, the Company may, in its sole discretion, submit such claim of breach or dispute to arbitration with the American Arbitration Association pursuant to its voluntary labor rules, which shall be binding upon the parties hereto. The Company's right to institute formal court proceedings regarding claims or disputes arising under this Agreement is in addition to, and is not limited by, the Company's right to submit any such claim or dispute to arbitration.

11. This Agreement shall not be construed as an employment agreement for a specific term. I acknowledge and agree that the Company and I may terminate my employment at any time for any reason.

WITNESSED BY:

Mary L. Nourie
Company/Representative (print)

Mary B. Nourie
Signature

12/18/00
Date

Michael Barker
Employee Name (print)

[signature]
Signature



AMERICAN ARBITRATION ASSOCIATION®    About · News · Events · Contact Us    "voluntary labor rules"

| Rules & Procedures | Areas of Expertise | Services | Arbitrators & Mediators | Education & Resources | File & Manage a Case › |

Home > Search Site

# Search

No Results

American Arbitration Association University® · Neutrals eCenter® · Mediation.org · NY Insurance Programs

©2013 American Arbitration Association.    Contact Us | Privacy Policy | Terms of Use >

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®



EXHIBIT B

http://www.adr.org/aaa/faces/s/sitesearch?q=%22voluntary%20labor%20rules%22&_afr...    10/18/2013