**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| SUPPLY BASKET, INC., KATHERINE LINDBERG, MICHAEL BARKER, & MELINDA HARTLEY, <br><br> Plaintiffs, <br><br> v. <br><br> GLOBAL EQUIPMENT COMPANY, INC. d/b/a/ Global Industrial Equipment, a subsidiary of Systemax, Inc., <br><br> Defendant. | CIVIL ACTION NO. <br> 1:13-CV-3220-RWS |

## **ORDER**

This case is before the Court on Defendant's Motion to Dismiss and Compel Arbitration [3]. After considering the record and the Parties' written submissions, the Court enters the following Order.

## **Background**[1]

The relevant facts are largely undisputed. The individual Plaintiffs are former employees of the Defendant. As a condition of their employment, each

---

[1] Unless otherwise indicated, all facts included in this section are alleged in Plaintiffs' Complaint filed in the Superior Court of Gwinnett County, Georgia and attached to Notice of Removal [1].

Plaintiff executed Confidentiality / Non-Solicitation / Assignment Agreements ("Agreements").  Each Agreement contains non-compete and non-disclosure covenants, and choice-of-law and arbitration clauses.  The Agreements read, in pertinent part:

> In the event of any claim of breach or dispute regarding this Agreement, the Company may, in its sole discretion, submit such claim of breach or dispute to arbitration with the American Arbitration Association pursuant to its voluntary labor rules, which shall be binding on the parties hereto.

([1-1] at 16, 18, 20 of 46.)

The individual Plaintiffs all separated from Defendant on or before May 20, 2013, and established Plaintiff Supply Basket, Inc., which began operating on May 23, 2013.  In June and July of 2013, the Parties' counsel exchanged letters concerning the Plaintiffs' new employment and the applicability of the non-disclosure and non-compete obligations, if any, under the Agreements.  On September 26, 2013, the Defendant filed a demand for arbitration with the American Arbitration Association ("AAA") against the individual Plaintiffs.  Also on September 26, the Defendant filed a petition for temporary restraining order in aid of arbitration in New York State Court.

2

AO 72A
(Rev.8/82)

On September 27, 2013, the Plaintiffs filed a motion for emergency injunctive relief in the Superior Court of Gwinnett County, Georgia. The Plaintiffs' suit seeks to prevent the Defendant from pursuing litigation or arbitration outside of Georgia to enforce the Agreements' covenants. The Georgia state court denied the Plaintiffs' request for injunctive relief. The Defendant then removed the action to this Court based on diversity jurisdiction.

On October 8, 2014, the Plaintiffs filed an Emergency Motion for Preliminary Injunctive Relief with this Court [2]. The Court held a hearing on the motion on October 21, 2013, and subsequently denied the motion [9]. The Defendant then filed its Motion to Dismiss and Compel Arbitration [3], which is now before the Court.

## Discussion

**I.     Delegation of the Determination of Arbitrability to the Arbitrator**

The Federal Arbitration Act ("FAA") expresses a "liberal federal policy favoring arbitration[,] . . . guaranteeing the enforcement of private contractual arrangements." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985). Giving effect to that policy "requires that [courts] rigorously enforce agreements to arbitrate." Id. (quoting Dean Witter Reynolds,

3

Inc. v. Byrd, 470 U.S. 213, 221 (1985)).  The "threshold question" of "whether [a party] was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." AT&T Techs., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 649 (1986) (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-7 (1964)).  Under the FAA, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-5 (1983).

The default rule is that courts should resolve the question of arbitrability. Regal Lager, Inc. v. The Baby Club of Am., Inc., No. 1:06-CV-092-JEC, 2006 WL 3388435, at *3 (N.D. Ga. Nov. 21, 2006).  However, the parties "may agree to submit the arbitrability question itself to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995).  In First Options, the Supreme Court held that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." Id. at 944 (internal quotations and citations omitted).

The Plaintiffs do not dispute that determination of arbitrability may be delegated to an arbitrator.  Instead, they argue that the terms of the arbitration

4

clause in the Agreements they executed are not sufficient to provide "the necessary clear and unmistakable evidence that the Plaintiffs intended for arbitrability to be decided by the arbitrator."  ([11] at 4 of 16.)  In support of their contention, they first argue that "the Agreement does not specifically say that arbitrability will be decided by the arbitrator."  (Id. at 4-5 of 16).  This argument is unpersuasive.

The Eleventh Circuit and the majority of other Circuits that have considered this issue have held that explicit delegation is not necessary; rather, incorporation of arbitration rules that empower an arbitrator to decide the issue of arbitrability is sufficient.  See Terminix Int'l Co. v. Palmer Ranch Ltd., 432 F.3d 1327, 1332-3 (11th Cir. 2005).[2]  In Terminix, the Eleventh Circuit

---

[2] See also Oracle Am., Inc. V. Myriad Group A.G., 724 F.3d 1069, 1074-5 (9th Cir. 2013) (holding incorporation of UNCITRAL rules is "clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability"); Republic of Arg. v. BG Group PLC, 665 F.3d 1363, 1371 (D.C. Cir. 2012) (holding that incorporation of UNCITRAL rules provided clear and unmistakable evidence of the parties' intent to arbitrate arbitrability); Petrefac, Inc. v. DynMcDermott Petroleum Operations Co., 687 F.3d 671, 675 (5th Cir. 2012) (stating "[w]e agree with most of our sister circuits that the express adoption of [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009) (stating "the arbitration provision's incorporation of the AAA Rules . . . constitutes clear and unmistakable expression of the parties' intent to leave the question of arbitrability to the arbitrator"); Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1373 (Fed. Cir. 2006) (concluding that the agreement at issue "which incorporates the AAA Rules . . . clearly and unmistakably

considered whether an arbitration clause stating "arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association" delegated the question of arbitrability to the arbitrator. Terminix, 432 F.3d at 1332. The relevant AAA rules stated, "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Id. (quoting Am. Arbitration Ass'n, Commercial Arbitration Rule 8(a)). The Eleventh Circuit held that "[b]y incorporating the AAA Rules . . . into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid." Id.

Incorporation of AAA rules generally, without identifying any particular subject-specific rules (e.g. Labor, Commercial, Employment), has also been found sufficient to provide clear and unmistakable evidence of intent to

---

shows the parties' intent to delegate the issue of determining arbitrability to an arbitrator"); Contec Corp. V. Remote Solution, Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005) (stating "when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); Apollo Computer, Inc. V. Berg, 886 F.2d 469, 472-3 (1st Cir. 1989) (Holding that incorporation of ICC rules providing for delegation of arbitrability was sufficient); but see Riley Mfg. Co.,Inc. v. Anchor Class Container Corp., 157 F.3d 775, 780 (10th Cir. 1998) (stating that an arbitration clause incorporating the AAA rules did not provide clear and unmistakable evidence of the parties' intent to arbitrate arbitrability).

6

delegate the determination of arbitrability to the arbitrator. Regal Lager, 2006 WL 3388435, at *3. The agreement in Regal Lager provided that "any dispute or litigation arising out of or relating to this Agreement" would be subject to arbitration "under the Rules of the American Arbitration Association." Id. at *4. Judge Carnes found that the parties' agreement effectively incorporated Rule 7(a) of the AAA Commercial Arbitration Rules, which gives the arbitrator power to determine the validity of the arbitration clause. Id.

The contract at issue in First Options, on the other hand, did not reference any specific arbitration body or rules. There, the arbitration clause provided that, "any controversy" arising out of the party's "business or this agreement . . . shall be submitted to and determined by arbitration." Kaplan v. First Options of Chicago, 19 F.3d 1503, 1506 (3d Cir. 1994). The Supreme Court found that the language in the arbitration clause was insufficient evidence of the parties' intent to submit arbitrabiltiy to the arbitrator. First Options, 514 U.S. at 946.

Here, the Agreements state that "[i]n the event of any claim of breach or dispute regarding this Agreement, the Company may, in its sole discretion, submit such claim . . . to arbitration with the [AAA] pursuant to its voluntary labor rules." ([1-1] at 16, 18, 20 of 46.) The Plaintiffs argue that the "specific

7

reference to ['voluntary labor rules'] that do not and did not exist or were certainly not in effect at the time the Agreement was signed . . . demonstrates that the parties did not at all focus on this arbitration provision, much less whether arbitrability would be decided by an arbitrator or the Court." ([11] at 4 of 16.)  Further, they argue, that reference to the "voluntary labor rules," "creates a patent ambiguity in the Agreement which must be construed against the drafter who is seeking arbitration."  (Id.)

The Court has reviewed the AAA rules in effect at the time the Plaintiffs executed their Agreements (1999, 2000, and 2006).[3]  All of the various sets of rules, including those designated "Labor Rules," include the following provision or some equivalent thereof: "The parties shall be deemed to have made these rules a part of their arbitration agreement whenever . . . they have provided for arbitration by the American Arbitration Association or under its rules.  These rules *and any amendment thereof shall apply in the form obtaining when the arbitration is initiated.*"[4] (emphasis added).  Today, all of the AAA

---

[3] (See [1-1] at 16, 18, 20 of 46) (Plaintiff Lindberg's Agreement dated Mar. 8, 1999, Plaintiff Barker's Agreement dated Dec. 18, 2000, and Plaintiff Hartley's Agreement dated Dec. 4, 2006).

[4] Labor Arbitration Rules (Including Expedited Labor Arbitration Rules), R. 1 (Jan. 1, 1996); Commercial Dispute Resolution Procedures (Including Mediation and

rules include a jurisdictional rule stating, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."[5]

In other words, by agreeing to arbitration by the AAA – under any set of AAA rules in place at the time the Agreements were executed or today – the Plaintiffs agreed to arbitrate the issue of arbitrability. The Court finds that its specific reference to arbitration by the AAA brings this arbitration clause within the scope of Terminix and Regal Lager, and distinguishes it from the arbitration clause at issue in First Options, which made no reference to the AAA or any

---

Arbitration Rules), R-1 (Jan. 1, 1999) and (Sept. 1, 2000); National Rules for the Resolution of Employment Disputes (Including Mediation and Arbitration Rules), R. 1 (Jan. 1, 1999), *available at* https://web.archive.org/web/20000619010525/http://www.adr.org/ (accessed by searching for "adr.org" in the Internet Archive Index and accessing the version of the page archived on June 19, 2000); see also Labor Arbitration Rules (Including Expedited Labor Arbitration Rules), R. 1 (July 1, 2005); Commercial Dispute Resolution Procedures (Including Mediation and Arbitration Rules), R-1(a) (Sept. 15, 2005); Employment Arbitration Rules and Mediation Procedures, R. 1 (July 1, 2006), *available at* https://web.archive.org/web/20000619010525/http://www.adr.org/ (accessed by searching for "adr.org" in the Internet Archive Index and accessing the version of the page archived on Jan. 27, 2007).

[5] See Labor Arbitration Rules (Including Expedited Labor Arbitration Rules), R. 3 (July 1, 2013); Employment Arbitration Rules and Mediation Procedures, R. 6(a) (Nov. 1, 2009); Commercial Arbitration Rules and Mediation Procedures (Including Procedures for Large, Complex Commercial Disputes), R-7 (Oct. 1, 2013), *available at* https://www.adr.org/aaa/faces/rules/searchrules? (last visited May 30, 2014).

other arbitration body.[6]  Based on the foregoing, the Defendant's Motion to Compel Arbitration is **GRANTED**.

## II.   Stay or Dismissal of the Case

The FAA states that when "any suit or proceeding [is] brought in [a district court] upon any issue referable to arbitration under an agreement," the Court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3; see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).  Accordingly, the Court must **STAY** the underlying action.

## Conclusion

For the aforementioned reasons, Defendant's Motion to Compel Arbitration is **GRANTED**.  Defendant's Motion to Dismiss is **DENIED**.  These

---

[6] The Plaintiffs make additional arguments regarding alleged ambiguity in the Agreements' arbitration clause.  (See [11] at 13 of 16.)  However, having found that the clause's reference to arbitration by the AAA evinces the Parties' clear intent to arbitrate according to current AAA rules, the Court's conclusion that the Parties delegated the question of arbitrability to the arbitrator is unchanged by these arguments.

proceedings are **STAYED** until the arbitrator resolves the underlying arbitration.

      **SO ORDERED**, this  4th  day of June, 2014.

                                        **RICHARD W. STORY**
                                        United States District Judge

AO 72A
(Rev.8/82)